JUDGMENT

PER CURIAM.
This appeal from a judgment of the United States District Court for the District of Columbia was presented to the court, and briefed and argued by counsel. The court has accorded the issues full consideration and has determined that they do not warrant a published opinion. For the reasons presented in the accompanying memorandum opinion, it is
ORDERED AND ADJUDGED that the grant of summary judgment be affirmed.
Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or rehearing en banc. See Fed. R.App. P. 41(b); D.C.Cir. Rule 41.

MEMORANDUM

Appellant contends that the district court erred in granting summary judgment on the grounds that she was neither disabled nor regarded as disabled within the meaning of the Rehabilitation Act of 1973 (“the Act”), 29 U.S.C. § 705(20)(B), and that she did not request a reasonable accommodation from her employer. She does not challenge summary judgment on her claim that the State Department intentionally discriminated against her on the basis of disability by failing to appoint her to postings in Paris and Frankfurt. Assuming that appellant suffered from a qualifying disability under the Act, we affirm upon de novo review. See Wilburn v. Robinson, 480 F.3d 1140, 1148-49 (D.C.Cir.2007).
Section 501(b) of the Act requires agencies to take affirmative steps to make accommodations for qualified persons with disabilities. 29 U.S.C. § 791(b); see Carr v. Reno, 23 F.3d 525, 528 (D.C.Cir.1994); 29 *667 C.F.R. § 1680.9(a). To survive summary-judgment on a reasonable accommodation claim under the Act, a plaintiff must proffer evidence from which a reasonable fact finder could find that (1) she had a qualifying disability, (2) her employer had notice of the disability, (3) with reasonable accommodation she could perform the essential functions of the position, and (4) she requested an accommodation but the employer denied her request. See Barth v. Gelb, 2 F.3d 1180, 1186-87 (D.C.Cir.1993); Flemmings v. Howard Univ., 198 F.3d 857, 861 (D.C.Cir.1999). We will assume that appellant met her burden on the first two elements.
As evidence of a request for an accommodation due to a qualifying disability, appellant relies on letters from her lawyer and neurologist to the State Department and a medical questionnaire she completed after she suffered a Grade 1 subarachnoid hemorrhage (“SAH”). The evidence, taken in the light most favorable to appellant, showed that she had spent two days in the hospital and taken several weeks of sick leave as a result of the SAH. Around the time that she returned to work in early November 2001, appellant’s lawyer and neurologist wrote to the State Department regarding her SAH. However, those letters do not mention that appellant was suffering from fatigue as would affect her ability to work or carry on major life activities. Rather, the letters claimed that appellant could suffer another hemorrhage or other serious health problems if she were subjected to “undue stress” or a “hostile work environment.” Letter from William T. Irelan, Freidman, Irelan, Ward & Lamberton, P.C., to Larry J. Eisenhart, Deputy CFO, Dep’t of State, at 1 (Oct. 24, 2001) (“Irelan Letter”); Letter from Sam Oraee, M.D., Neurological Ctr. of N. Va., to Grant S. Green, Under Sec’y of Mgmt., Dep’t of State (Nov. 16, 2001). Her lawyer’s letter specifies that the source of the stress and hostility for which appellant required an accommodation was the harassment she had allegedly suffered from her colleagues in the Internal Financial Services (“IFS”) in the Bureau of Financial Management Policy and a resulting internal investigation of the alleged misconduct. Appellant’s lawyer also claimed that assigning her on detail and asking staff to refrain from discussing an ongoing investigation would not satisfy the department’s obligation “to accommodate [appellant’s] medical condition.” Irelan Letter at 2. Indeed, at her deposition, appellant described the letters sent in October and November 2001 as requests to resolve the hostile work environment. See Thompson Dep. 34, 37, Sept. 3, 2004.
As to the questionnaire, after she returned to work, appellant was placed on a temporary work detail in the Human Resources office that continued until she was posted to Berlin for six weeks in May 2002. Prior to her posting in Berlin, she had sought assistance in resolving her work assignment issues, see Letter from Barbara Pope, Assistant Sec’y, Office of Civil Rights, to Jill Thompson (Mar. 15, 2002), and submitted the questionnaire. In the questionnaire appellant stated, “[m]y difficulties do not relate in any way to assigned duties in my Work Requirements Statement” because she was working without such a statement; she also explained that she was not requesting a change in her job. Medical Questionnaire at 1, Mar. 21, 2002. Rather, she advised that she was in the process of bidding for “another foreign service assignment,” and stated, “[i]n the bidding process, I would like the State Department’s support in following my doctor’s instructions [noted] below.” Id. Her neurologist advised that appellant reported suffering from “excessive fatigue” and “occasional headaches,” and opined that “[i]f the fatigue she is now experiencing is not a *668 secondary effect of the SAH, [appellant] should be able to effect a full recovery and pursue a normal work routine.” Id. at 2. He further advised that:
She should be able to continue working a 40-hour week at the State Department in any position for which she is qualified. I recommend that she be given a certain amount of discretion in managing her workload. If possible, she should be placed in an office, which is “employee friendly” and does not in its circumstances represent the appearance or perception of any directed hostility against her.
Id. at 3.
Assuming without deciding that appellant is disabled under the Act because she suffers from chronic fatigue that substantially limits her ability to sleep, work, and live independently, see Desmond v. Mukasey, 530 F.3d 944, 958-59 (D.C.Cir.2008), this evidence is insufficient to raise a genuine issue as to whether she requested a reasonable accommodation that the department rejected. “An underlying assumption of any reasonable accommodation claim is that the plaintiff-employee has requested an accommodation which the defendant-employer has denied.” Flemmings, 198 F.3d at 861. This means that the employer must know that the employee has a disability that prevents her from performing the essential functions of her present or desired position, see Smith v. Midland Brake Inc., 180 F.3d 1154, 1171-72 (10th Cir.1999); Taylor v. Principal Fin. Group, Inc., 93 F.3d 155, 164 (5th Cir.1996); Adams v. Rice, 531 F.3d 936, 953-54 (D.C.Cir.2008) (dictum); 29 C.F.R. § 1630.2(o)(1)(ii), and that the employee is seeking assistance from the employer, see Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 313 (3d Cir.1999).
Appellant’s purported requests for an accommodation in October and November 2001 refer to a different claimed limitation (inability to handle stress) and a different claimed disability (the SAH). While appellant maintains that the SAH and her fatigue collectively constitute a qualifying disability, other than noting that she became fatigued in the months after she suffered the SAH, she proffered no evidence to link her fatigue to the SAH. Rather, as the district court noted, appellant’s neurologist indicated that fatigue was not generally an effect of a SAH and never suggested that he believed that appellant’s SAH caused her fatigue. Nor is there any evidence that appellant’s fatigue was caused by her chosen treatment regimen for the SAH. Cf. Adams, 531 F.3d at 950. Moreover, during discovery, appellant ascribed her fatigue in large measure to work-related stress. And while a very serious medical event, the evidence showed that the SAH was a relatively temporary impairment without a permanent or long-term impact, and therefore does not qualify as disability under the Rehabilitation Act. See Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 198, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002).
Appellant’s request in March 2002 for “support” in finding a suitable posting and her conversations with Barbara Pope may have put the department on notice that she wanted some sort of assistance but no reasonable fact finder could conclude that the questionnaire indicated that her fatigue prevented her from performing the duties of her position on detail to the Human Resources office, her prior position as a financial management specialist in IFS, or the duties of “any position for which she [was] qualified.” Medical Questionnaire at 3. In the district court appellant offered that the reasonable accommodation she requested in March 2002 was “reassignment to a comparable position to the one from which [she] had been re *669 moved in IFS.” Thompson Deel. It 7, May 27, 2005. However, there is no evidence that appellant’s departure from IFS was related to her claimed disability, and a reasonable fact finder could not find from the proffered evidence that she asked for a reassignment specifically to address that disability.
Rather, appellant proffered evidence that after suffering a SAH, she was unable to remain in a work environment poisoned by gossip particularly during an internal investigation, and that she sought the department’s support in obtaining a posting away from the turmoil. She did not proffer evidence that she suffered from a qualifying disability that substantially affected her ability to do her job and that she therefore requested an accommodation under the Act. Accordingly, appellant has failed to show that summary judgment was inappropriate and we affirm.